`

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

| | |
|---|---|
| MATTHEW PERRY, individually and on behalf of other similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>WEST CAPITAL LENDING, INC.,<br><br>        Defendant. | Case No. 4:26-cv-00094-KGB<br><br>**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT** |

i

`

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................................... 2

III.  LEGAL STANDARDS......................................................................................... 3

   A.   12(b)(1) ......................................................................................................... 3

   B.   12(b)(6) ......................................................................................................... 3

IV.   ARGUMENT ....................................................................................................... 4

   A.   Plaintiff's DNC Claims Must Be Dismissed Under 12(b)(6) Because the TCPA's DNC
        Provisions Apply Only to Telephone Calls—Not Text Messages or Ringless Voicemails. 4

      1.   Under the Statute's Plain Text Neither Text Messages Nor Ringless Voicemails Are
           Telephone Calls.................................................................................................. 5

         a.   Text Messages ............................................................................................. 6

         b.   Ringless Voicemails .................................................................................... 7

      2.   The FCC's Rationale for Treating Ringless Voicemails as "Calls" Has Been
           Undermined......................................................................................................... 7

      3.   A Growing Consensus of Courts Has Rejected FCC Interpretations Post-*Loper Bright*  8

      4.   Plaintiff Failed to Allege Any "Telephone Calls" and Count I Must Be Dismissed...... 10

   B.   Count II Should Be Dismissed Under 12(b)(6) Because Plaintiff Has Not Adequately
        Alleged the Ringless Voicemail Utilized a "Prerecorded" Voice...................................... 10

      1.   Conclusory Allegations that the RVM was "Prerecorded" Are Insufficient...................11

      2.   Plaintiff's Allegations Stand in Stark Contrast to Complaints That Have Survived
           Dismissal............................................................................................................ 12

   C.   Plaintiff's Request for Injunctive Relief Must Be Dismissed Under 12(b)(1) for Lack of
        Article III Standing ................................................................................................. 13

V.    CONCLUSION.................................................................................................... 15

`

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................3, 4, 11, 12

*Auer v. Trans Union, LLC*,
  902 F.3d 873 (8th Cir. 2018)............................................................................................ 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................................... 3, 4

*Briehl v. Gen. Motors Corp.*,
  172 F.3d 623 (8th Cir. 1999).......................................................................................... 4

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983)........................................................................................................ 14

*Davis v. CVS Pharmacy, Inc.*,
  797 F. Supp. 3d 1270 (N.D. Fla. 2025)....................................................... 6, 8, 9, 10

*Dickson v. Direct Energy, LP*,
  69 F.4th 338 (6th Cir. 2023)...................................................................................... 8, 10

*Grigorian v. FCA US LLC*,
  838 F. App'x 390 (11th Cir. 2020) .............................................................................. 7, 8

*Harmon v. City of Kansas City, Mo.*,
  197 F.3d 321 (8th Cir. 1999) ...................................................................................... 14

*Herrera v. Navient Corps.*,
  2020 WL 3960507 (E.D.N.Y. July 13, 2020)............................................................. 12

*James v. Smarter Contact, Inc.*,
  2026 WL 879244 (M.D. Fla. Mar. 31, 2026)............................................................. 9

*Jones v. Blackstone Med. Servs., LLC*,
  792 F. Supp. 3d 894 (C.D. Ill. 2025)........................................................................ 5, 9

*Koeller v. Cyflare Sec., Inc.*,
  2025 WL 3280316 (E.D. Mo. Nov. 25, 2025) ............................................... 3, 14, 15

*Koeller v. Seemplicity Sec. Inc.*,
  2024 WL 4751306 (E.D. Mo. Nov. 12, 2024) ........................................................ 10

`

*Laccinole v. Gulf Coast Collection Bureau, Inc.*,
   2023 WL 157719 (D.R.I. Jan. 11, 2023) ................................................................................ 12

*Loper Bright Enterprises v. Raimondo*,
   603 U.S. 369 (2024) ........................................................................................................ 1, 5, 10

*Lopresti v. Nouveau Essentials Marketing LLC*,
   2026 WL 964758 (M.D. Fla. Feb. 26, 2026) ........................................................................... 9

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ................................................................................................................. 3

*Martin v. Bottom Line Concepts, LLC*,
   723 F. Supp. 3d 270 (S.D.N.Y. 2024) ................................................................................... 15

*McGonigle v. Pure Green Franchise Corp.*,
   2026 WL 111338 (S.D. Fla. Jan. 15, 2026) ............................................................................ 9

*McLaughlin Chiropractic Associates v. McKesson Corp.*,
   606 U.S. 146 (2025) ................................................................................................................. 5

*McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*,
   606 U.S. 146 (2025) ............................................................................................................. 1, 5

*Metzler v. Pure Energy USA LLC*,
   2023 WL 1779631 (S.D.N.Y. Feb. 6, 2023) .................................................................... 11, 12

*Miller v. Time Warner Cable Inc.*,
   2016 WL 7471302 (C.D. Cal. Dec. 27, 2016) ...................................................................... 15

*Morton v. Becker*,
   793 F.2d 185 (8th Cir. 1986) ................................................................................................... 4

*Neitzke v. Williams*,
   490 U.S. 319 (1989) ................................................................................................................. 4

*Radvansky v. 1-800-Flowers.com, Inc.*,
   2026 WL 456919 (N.D. Ga. Feb. 17, 2026) ................................................................... 7, 8, 9

*Radvansky v. Kendo Holdings, Inc.*,
   2026 WL 810929 (N.D. Ga. Feb. 12, 2026) ............................................................................ 9

*Rahimian v. Adriano*,
   2022 WL 798371 (D. Nev. Mar. 16, 2022) .................................................................. 11, 12, 13

`

*Richards v. Fashion Nova, LLC*,

    2026 WL 847568 (S.D. Ind. March 26, 2026) ...................................................................... 9

*Richards v. Shein Distribution Corporation*,

    2026 WL 847584 (S.D. Ind. March 26, 2026) ...................................................................... 9

*Robertson v. Mortgage Research Center, LLC*,

    2024 WL 5046604 (W.D. Mo. Dec. 9, 2024)...................................................................... 10

*Rose v. New TSI Holdings, Inc.*,

    2022 WL 912967 (S.D.N.Y. Mar. 28, 2022) ...................................................................... 13

*Rowan v. Pierce,*

    2023 WL 5672575 (D.P.R. Sept. 1, 2023) ......................................................................... 10

*Sayed v. Naturopathica Holistic Health, Inc.*,

    2025 WL 2997759 (M.D. Fla. Oct. 24, 2025)................................................................. 6, 9

*Schaevitz v. Braman Hyundai, Inc.*,

    437 F. Supp. 3d 1237 (S.D. Fla. 2019)............................................................................... 15

*Spokeo, Inc. v. Robins*,

    578 U.S. 330 (2016).............................................................................................................. 3

*Stockdale v. Skymount Prop. Grp., LLC*,

    2026 WL 591842 (N.D. Ohio Mar. 3, 2026)................................................................ 6, 8, 9

*Taylor v. Kin Insurance, Inc.*,

    2025 WL 1651524 (N.D. Ill. June 10, 2025) ................................................................ 13, 14

*Thompson v. Vintage Stock, Inc.*,

    2025 WL 385681 (E.D. Mo. Feb. 3, 2025)......................................................................... 9

*Vandiver v. Glob. Credit & Collection Corp., Inc.*,

    2015 WL 11108884 (E.D. Ark. Mar. 30, 2015) .................................................................. 4

*Young v. City of St. Charles*,

    244 F.3d 623 (8th Cir. 2001)............................................................................................... 4

*Zimmer Radio of Mid-Missouri, Inc. v. FCC*,

    145 F.4th 828 (8th Cir. 2025)............................................................................................. 5

**Statutes and Rules**

47 U.S.C. § 227.................................................................................................... *passim*

`

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
    FCC 22-85 (Nov. 21, 2022) ................................................................................................. 8

## I.      **INTRODUCTION**

Plaintiff's Complaint asks this Court to stretch the Telephone Consumer Protection Act ("TCPA") far beyond its text. Plaintiff alleges that he received nine text messages and one ringless voicemail from West Capital Lending. ECF No. 1 ("Compl.") ¶¶ 28, 31, 34, 40. Based on these communications alone, Plaintiff brings two claims, individually and on behalf of a putative class: 1) Violations of 47 U.S.C. § 227(c)(5), on behalf of a Do Not Call Class; *and* 2) Violations of 47 U.S.C. § 227(b)(1)(A)(iii), on behalf of a "Robocall" Class. Neither claim survives scrutiny under governing law.

Count I must be dismissed because the TCPA's Do Not Call private right of action applies only to "telephone calls." *See* 47 U.S.C. § 227(c)(5). Neither text messages nor ringless voicemails qualify as "telephone calls" under the statute's plain text. The Supreme Court's decisions in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), and *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025) require courts to interpret the TCPA independently— not through the lens of agency deference. Under that framework, the answer is clear: in 1991, when the TCPA was enacted, a "telephone call" meant a voice communication initiated by dialing a telephone number and causing the recipient's phone to ring. Text messages are written electronic communications, not voice calls. Ringless voicemails bypass the telephone entirely, depositing audio messages directly into voicemail without ever causing the recipient's phone to ring; they also are not telephone calls. Neither fits within the ordinary meaning of "telephone call." A growing consensus of federal courts agree. Because Plaintiff has alleged only nine text messages and one ringless voicemail, he has failed to allege "more than one telephone call" in any ordinary sense as required by § 227(c)(5). Count I fails as a matter of law.

1

`

Count II fares no better. Plaintiff fails to sufficiently plead the use of a prerecorded voice. Plaintiff's sole allegation is that the voicemail "featured a prerecorded voice"—a bare legal conclusion devoid of factual support. Compl. ¶ 41. The Complaint does not explain how Plaintiff identified the voice as prerecorded. It does not allege that the voice sounded artificial or robotic. It does not allege that identical messages were received. Federal courts routinely dismiss such conclusory prerecorded voice claims at the pleading stage, and this Court should do the same.

Finally, Plaintiff's request for injunctive relief must be dismissed under Rule 12(b)(1) for lack of Article III standing. The Complaint alleges only past conduct. It contains no facts suggesting a risk of future harm. It is well-settled that past wrongs alone do not confer Article III standing for injunctive relief.

For the reasons set forth in detail below, the Court should dismiss the Complaint in its entirety with prejudice.

## II.   FACTUAL BACKGROUND

Plaintiff Matthew Perry ("Plaintiff") filed this class action complaint on February 2, 2026, against Defendant West Capital Lending, Inc. ("West Capital" or "Defendant"), a mortgage lending company, alleging violations of the TCPA. Compl. ¶¶ 3, 17. Plaintiff alleges his cellular telephone number has been listed on the National Do Not Call Registry since December 14, 2004. *Id*. ¶ 25.

Plaintiff alleges that beginning on December 14, 2025, he received at least nine marketing text messages and one ringless voicemail ("RVM") from Defendant, all from the same telephone number. *Id*. ¶¶ 28–31, 34-35. Plaintiff alleges that the voicemail was delivered through "ringless voicemail" technology—meaning it was deposited directly into Plaintiff's voicemail box without causing the phone to ring. *Id*. ¶ 40. As to the RVM, the Complaint alleges only that it "featured a prerecorded voice and did not include any personalization such as the Plaintiff's name." *Id*. ¶ 41.

`

The Complaint does not allege any facts explaining how Plaintiff determined the voice was prerecorded, nor does it allege that the voice sounded artificial, that multiple identical messages were received, or that the message matched complaints from other consumers. *See id.*

Based on these allegations, Plaintiff asserts two causes of action: Count I for violations of the TCPA's Do Not Call ("DNC") provisions, 47 U.S.C. § 227(c)(5), and Count II for violations of 47 U.S.C. § 227(b) based on the alleged use of a prerecorded voice. *Id.* ¶¶ 55–66.

## III.    LEGAL STANDARDS

### A.  12(b)(1)

Plaintiff bears the burden of establishing Article III standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Standing requires: (1) injury in fact; (2) causation; (3) redressability. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "To establish an injury in fact, a plaintiff must show an injury that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Auer v. Trans Union, LLC*, 902 F.3d 873, 877 (8th Cir. 2018). Courts may dismiss complaints under Fed. R. Civ. P. 12(b)(1) for lack of federal subject matter jurisdiction where the plaintiff lacks standing under Article III of the U.S. Constitution. *Koeller v. Cyflare Sec., Inc.*, No. 4:25-CV-00410-MTS, 2025 WL 3280316, at *2–3 (E.D. Mo. Nov. 25, 2025) (finding no standing for injunctive relief). Requests for injunctive relief may be dismissed under 12(b)(1) where the plaintiff lacks Article III standing to seek it. *Id.*

### B.  12(b)(6)

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Vandiver v. Glob. Credit & Collection Corp., Inc.*, No. 4:14-CV-00011 KGB, 2015 WL 11108884, at *3 (E.D. Ark.

3

`

Mar. 30, 2015) (Baker, J.) (dismissing TCPA claims under Rule 12(b)(6)). This is a demanding standard. A claim rises to the level of facial plausibility only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

While a complaint need not contain detailed factual allegations, a plaintiff's obligation to provide the "grounds" for "entitle[ment] to relief" requires far more than labels and conclusions; a formulaic recitation of a cause of action's elements will not suffice. *Twombly*, 550 U.S. at 555. Critically, whether a complaint states a claim is a question of law. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986); *see also Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 627 (8th Cir. 1999); *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). Although the Court must accept the complaint's well-pleaded factual allegations as true and draw all reasonable inferences in favor of the nonmoving party, *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001), the Court is under no obligation to credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

## IV.  ARGUMENT

### A.  Plaintiff's DNC Claims Must Be Dismissed Under 12(b)(6) Because the TCPA's DNC Provisions Apply Only to Telephone Calls—Not Text Messages or Ringless Voicemails

Plaintiff's claims fail as a matter of law because Plaintiff fails to allege at least two (2) "telephone calls" in a twelve (12) month period, as required to sufficiently plead a claim based on the TCPA's DNC provisions. Specifically, the private right of action Plaintiff sues under, 47 U.S.C. § 227(c)(5), provides a remedy only for "[a] person who has received more than one **telephone call**." 47 U.S.C. § 227(c)(5) (emphasis added). Here, Plaintiff attempts to plead this claim by alleging he received nine text messages and one RVM, neither of which constitutes a "telephone call" under the statute's plain text. As demonstrated below, text messages are not "telephone calls,"

4

`

and RVMs, which bypass the telephone entirely by depositing messages directly into voicemail without causing the phone to ring, likewise fall outside the statute's scope. Accordingly, Plaintiff has alleged zero qualifying "telephone calls," and Count I must be dismissed.

Whereas previously, courts bound by Federal Communications Commission ("FCC") interpretations construed the TCPA's protections to extend to text messages and RVMs, following the Supreme Court's decisions in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), and *McLaughlin Chiropractic Associates v. McKesson Corp.*, 606 U.S. 146 (2025), this Court is no longer bound by past FCC interpretations and, instead, must independently interpret the statute. *McLaughlin*, 606 U.S. at 155 ("District courts are not bound by the agency's interpretation but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation.") (*citing Loper Bright*, 603 U.S. at 402). The Eighth Circuit has confirmed this framework. *Zimmer Radio of Mid-Missouri, Inc. v. FCC*, 145 F.4th 828, 843 (8th Cir. 2025) ("Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority."). Applying independent statutory interpretation, telephone calls only capture calls and nothing else.

    1.  <u>Under the Statute's Plain Text Neither Text Messages Nor Ringless Voicemails Are Telephone Calls</u>

The plain meaning of "telephone call" at the time of the TCPA's enactment in 1991 unambiguously referred to a voice-to-voice communication—and for good reason: text messaging technology did not yet exist. *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 900 (C.D. Ill. 2025) ("Text messaging was not an available technology in 1991, and thus 'telephone call' would not have included text messages or SMS messages."). When Congress passed the TCPA, a "telephone" meant an "apparatus, system, or process for transmission of sound or speech to a distant point." *Stockdale v. Skymount Prop. Grp., LLC*, No. 1:25 CV 1282, 2026 WL 591842, at

5

`

*3 (N.D. Ohio Mar. 3, 2026) (applying 1991 dictionary definitions to conclude that "'telephone call' could not include modern-day text messages because text messages do not use a telephone to reproduce sounds at a distance"). Similarly, RVMs did not become a prevalent technology until decades later, further confirming that Congress could not have intended its inclusion within the term "telephone call."

### a. Text Messages

Text messages are not "telephone calls" under any ordinary understanding of that term. As the court in *Davis v. CVS Pharmacy, Inc.* observed: "[n]o ordinary user of the English language would write the sentence 'John called Sue' intending to mean 'John sent a text message to Sue,' nor would any ordinary reader interpret the sentence in that manner." 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025). *Accord Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-CV-00847-SDM-CPT, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) (holding that a "'telephone call' and a 'text message' are separate and distinct forms of communication.").

The canons of statutory construction compel the same conclusion. The TCPA's definition of "telephone solicitation" in § 227(a)(4) refers to the initiation of a "telephone call or message." 47 U.S.C. § 227(a)(4). Yet in the very private right of action provision at issue, § 227(c)(5), Congress deliberately chose to provide a remedy only for the receipt of more than one "telephone call"—conspicuously omitting the phrase "or message" that appears elsewhere in the statute. That deliberate omission forecloses Plaintiff's claim. *Davis*, 797 F. Supp. 3d at 1274 ("Congress's use of the phrase 'telephone call or message' in a neighboring provision only undermines [plaintiff's] position" because "[i]t shows that Congress does not use the term 'telephone call' to encompass all 'messages'"). The inference is even more powerful given that Congress amended the TCPA in 2018 to expressly add "text message" to § 227(e)(1) while leaving § 227(c)(5) entirely untouched.

`

*See Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-CV-2811-TWT, 2026 WL 456919, at \*3–4 (N.D. Ga. Feb. 17, 2026) (concluding that because Congress recently added 'text message' to § 227(e) while deliberately leaving § 227(c)(5) untouched, text messages are unequivocally excluded from § 227(c)(5)). Congress knew exactly how to include text messages when it wanted to—and it chose not to in § 227(c)(5). That choice is dispositive.

### b. Ringless Voicemails

RVMs are technologically and legally distinct from "telephone calls." A RVM bypasses the telephone entirely—it is deposited directly into the recipient's voicemail box without causing the phone to ring. Compl. ¶ 40. The recipient's phone never rings, no telephone line is engaged, and no real-time voice communication occurs. *See Grigorian v. FCA US LLC*, 838 F. App'x 390, 392 (11th Cir. 2020) (describing how RVMs function). A communication that never actually rings the telephone can hardly be characterized as a "telephone call" in any ordinary sense of that term. *Id*.

The statutory structure reinforces this conclusion. Section 227(c)(5) provides a private right of action only for "more than one telephone call." 47 U.S.C. § 227(c)(5). It does not reference voicemails, messages, or other forms of communication. Congress knew how to distinguish among different communication technologies when it chose to do so. It referenced "telephone call or message" in § 227(a)(4), "text message" in § 227(e)(1), and "artificial or prerecorded voice" in § 227(b)(1)(B), yet it limited the § 227(c)(5) private right of action to "telephone call[s]" alone. This deliberate choice forecloses expanding the statute to cover RVMs.

### 2. The FCC's Rationale for Treating Ringless Voicemails as "Calls" Has Been Undermined

In 2022, the FCC issued a Declaratory Ruling finding that RVMs constitute "calls" under § 227(b)(1)(A)(iii). *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC 22-85 at 13677, (Nov. 21, 2022). Critically, however, the FCC's rationale was

`

entirely derivative of its earlier treatment of text messages: the agency concluded that a "ringless voicemail constitutes a 'call' . . . for the same reasons the Commission found computer-generated text messages . . . to be calls." *Id*. at ¶ 6. That derivative rationale is fatally flawed.

As demonstrated in Section (A)(1)(a), *supra*, a growing consensus of post-*Loper Bright* courts has held that text messages are not "telephone call[s]" under § 227(c)(5). *See Stockdale*, 2026 WL 591842, at *3; *Davis,* 797 F. Supp. 3d at 1273; *Radvansky*, 2026 WL 456919, at *3–4. If text messages are not "telephone calls"—as they plainly are not—then the FCC's entire rationale for treating RVMs as "calls" collapses, because the agency's RVM conclusion rests on the very same reasoning courts have now rejected.[1]

3.  <u>A Growing Consensus of Courts Has Rejected FCC Interpretations Post-<br/>*Loper Bright*</u>

Applying these principles, an increasing number of district courts have dismissed DNC claims based on text messages in the wake of *McLaughlin* and *Loper Bright*. The court in *Stockdale* joined several other courts in "holding that the term 'telephone call' as used in Section 227(c)(5) of the TCPA does not encompass 'text messages,'" reasoning that "it is for Congress—not this Court—to fill those gaps in the wake of *Chevron's* reversal." 2026 WL 591842, at *2, 4. In *McGonigle v. Pure Green Franchise Corp*., the court rejected the argument that the FCC's delegation under § 227(c)(1)(E) authorizes treating texts as calls, reasoning that "[d]oubling the scope of the provision is not 'filling up the details'" and declining Plaintiff's "request that we use § 227(c)(1)(E) to resurrect *Chevron* out of the grave." No. 25-61164-CIV-SINGHAL, 2026 WL

---

[1] Moreover, RVMs are technologically distinct from traditional telephone calls. "RVM technology makes it possible to 'deposit[ ] voicemails directly into a recipient's voicemail box, without placing a traditional call to the recipient's wireless phone.'" *Dickson v. Direct Energy, LP*, 69 F.4th 338, 341 (6th Cir. 2023). The recipient's phone does not ring, no telephone line is engaged, and no real-time voice communication occurs. *See Grigorian*, 838 F. App'x at 392 (describing how RVMs function). A communication that never actually rings the telephone can hardly be characterized as a "telephone call" in any ordinary sense of that term. *Id*.

8

`

111338, at *2 (S.D. Fla. Jan. 15, 2026). The weight of authority is overwhelming. *See, e.g., Radvansky*, 2026 WL 456919, at *3–4 (adopting the same reasoning); *Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 900 (holding text messages are not telephone calls under § 227(c)(5) of the TCPA); *Davis*, 797 F. Supp. 3d at 1273 (same); *Sayed*, 2025 WL 2997759, at *2 (same); *Radvansky v. Kendo Holdings, Inc.*, No. 3:23-CV-00214-LLM, 2026 WL 810929, at *2-3 slip op. (N.D. Ga. Feb. 12, 2026) (same); *Lopresti v. Nouveau Essentials Marketing LLC*, No. 5:25-CV-00282-CEM-PRL, 2026 WL 964758, at *4 (M.D. Fla. Feb. 26, 2026) (same); *Richards v. Fashion Nova, LLC*, No. 1:25-CV-01145-TWP-MKK, 2026 WL 847568, at *3-4 (S.D. Ind. March 26, 2026) (same); *Richards v. Shein Distribution Corporation*, No. 1:25-CV-01385-TWP-TAB, 2026 WL 847584, at *3-4 (S.D. Ind. March 26, 2026) (same); *James v. Smarter Contact, Inc.*, No. 8:25-CV-1657-KKM-SPF, 2026 WL 879244, at *3-4 (M.D. Fla. Mar. 31, 2026) (same).

No Eighth Circuit court has squarely addressed this issue post-*Loper Bright*. While courts in this Circuit have encountered the question, none have rendered a binding holding or even squarely addressed this issue. In *Thompson v. Vintage Stock, Inc.*, No. 4:23-CV-00042-SRC, 2025 WL 385681, at *4 (E.D. Mo. Feb. 3, 2025), the parties did not dispute the issue of whether text messages constitute phone calls, and the court merely "assum[ed] without deciding" that texts were covered under the TCPA. *See also Robertson v. Mortgage Research Center, LLC*, No. 2:24-CV-04106-MDH, 2024 WL 5046604 (W.D. Mo. Dec. 9, 2024) (the court did not opine on and decide on whether text messages fall within the TCPA). Similarly, in the wake of *Loper Bright* and *McLaughlin*, no reported federal court has addressed whether RVMs qualify as "telephone calls" under § 227(c)(5).[2] This Court therefore writes on a clean slate and should join the widening consensus of courts that have followed the plain language of the TCPA.

---

[2] The pre-*Loper Bright* decisions that found RVMs to be "calls" under the TCPA relied on deference to the FCC's interpretation and this rationale is no longer viable. *See Rowan v. Pierce,* No. 20-1648 (RAM), 2023 WL 5672575, at

9

`

      4.   <u>Plaintiff Failed to Allege Any "Telephone Calls" and Count I Must Be Dismissed</u>

Because neither the alleged text messages nor RVM constitute a "telephone call," Plaintiff's DNC claim fails for an additional and wholly independent reason. To adequately plead a claim under Section 227(c)(5), Plaintiff must allege receipt of "more than **one** telephone call" in a twelve (12) month period. *See* 47 U.S.C. § 227(c)(5) (emphasis added). Stripped of the text messages and the RVM, Plaintiff is left with zero qualifying communications. It is well established <u>that a plaintiff cannot satisfy the statutory threshold without alleging at least two telephone calls.</u> *See Davis,* 797 F. Supp. 3d at 1275–76 ("To succeed on his § 227(c)(5), Davis had to allege that he received at least two 'telephone calls.'"); *Koeller v. Seemplicity Sec. Inc.*, No. 4:24-CV-00528-SRC, 2024 WL 4751306, at *3 (E.D. Mo. Nov. 12, 2024) (noting that § 227(c)(5) "creates a private right of action for [a] person who has received more than one telephone call"). Count I must be dismissed.

**B. Count II Should Be Dismissed Under 12(b)(6) Because Plaintiff Has Not Adequately Alleged the Ringless Voicemail Utilized a "Prerecorded" Voice**

Plaintiff fails to allege sufficient facts supporting the essential elements of a claim under Section 227(b) of the TCPA. Section 227(b)(1)(B) of the TCPA prohibits any person from making a call "using an artificial or prerecorded voice" to a cellular telephone number without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(B). The use of an artificial or prerecorded voice is thus an essential element of a § 227(b) claim. Plaintiff bears the burden of pleading sufficient facts to support a plausible inference that the voicemail he received utilized such technology, as opposed to being left by a live person. *See Iqbal*, 556 U.S. at 678.

---

*6 n. 5 (D.P.R. Sept. 1, 2023) ("According to guidance issued by the Federal Communications Commission ("FCC"), a ringless voicemail is a 'call' covered by section 227(b)(1)(A)(iii) of the TCPA."); *Dickson*, 69 F.4th at 342 n.1 (same). *See also Loper Bright*, 603 U.S. at 412–13 (overruling *Chevron* deference).

`

### 1. Conclusory Allegations that the RVM was "Prerecorded" Are Insufficient

Courts have consistently held that merely labeling a voicemail as "prerecorded" is insufficient to state a § 227(b) claim without additional factual support. While courts do not expect a plaintiff to know the exact technical specifications of a call at the pleading stage, they have required plaintiffs to plead plausible facts and sufficient contextual details supporting an inference that prerecorded voice technology was used, as opposed to a live human speaking. *See Metzler v. Pure Energy USA LLC*, No. 21-CV-9798 (VEC), 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6, 2023); *Rahimian v. Adriano*, No. 2:20-CV-02189-GMN-VCF, 2022 WL 798371, at *2–3 (D. Nev. Mar. 16, 2022). *Metzler* is directly on point. There, the plaintiff alleged that he received a "ringless voicemail" and that "he was easily able to determine … [it] was a prerecorded message" but pled no other factual details suggesting the voicemail was truly prerecorded. *Metzler*, 2023 WL 1779631, at *6. The court dismissed the § 227(b) claim, holding that the plaintiff had "not alleged adequately that he received a prerecorded voice message." *Id.* at *6-7. Similarly, in *Rahimian,* the court held that a bare allegation of a "prerecorded voice message" without additional circumstances was conclusory and insufficient to survive a motion to dismiss. 2022 WL 798371, at *2-3. In reaching this conclusion, the Court relied upon numerous cases requiring specific facts beyond mere conclusory allegations to state a § 227(b) claim. *Id*. at *2–3. *See also Laccinole v. Gulf Coast Collection Bureau, Inc.*, No. 22-223-JJM-LDA, 2023 WL 157719, at *3 (D.R.I. Jan. 11, 2023) (finding "general allegations that Gulf Coast used a prerecorded message" insufficient "to make out a TCPA claim"). *Herrera v. Navient Corps.*, No. 19-CV-06583(AMD) (VMS), 2020 WL 3960507, at *7 (E.D.N.Y. July 13, 2020) ("plaintiff has to do more than simply recite the statutory language").

11

`

Plaintiff's Complaint does not meet the required standard. The sole allegation supporting Count II is that the voicemail "featured a prerecorded voice and did not include any personalization such as the Plaintiff's name." Compl. ¶ 41. This is a legal conclusion, not a factual allegation. Indeed, it merely parrots the statutory element that Plaintiff must prove—that the voice was "prerecorded"—without providing any factual basis from which this Court could draw that inference. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Contextual details are critically important in cases where the plaintiff allegedly received a voicemail. A voicemail message left by a live person in real time does not violate Section 227(b) of the TCPA. An RVM alone does not establish that the voice was prerecorded; it could just as easily have been left by a live person reading from a script. *See Metzler*, 2023 WL 1779631, at *6 n.12 (dismissing claim where the voicemail itself provides "no indication that it was prerecorded as opposed to having been left by a caller reading from a script"). The Complaint's deficiency becomes even clearer when one examines what Plaintiff does not allege. The Complaint does not allege: 1) any facts explaining how Plaintiff determined the voice was prerecorded; 2) that the voice sounded artificial, robotic, or unnatural in tone; 3) that Plaintiff received multiple identical messages; *and* 4) that the message matched complaints from other consumers. *See* Compl. ¶ 41. These omissions are critical. Without such contextual details, Plaintiff's single allegation is nothing more than a conclusory label that "does not suffice" under federal pleading standards. *Rahimian*, 2022 WL 798371, at *3.

> 2. <u>Plaintiff's Allegations Stand in Stark Contrast to Complaints That Have Survived Dismissal</u>

The insufficiency of Plaintiff's Complaint is further illustrated by contrasting it with complaints that have survived dismissal. In *Taylor v. Kin Insurance, Inc.*, No. 25-CV-00213, 2025

`

WL 1651524, at *2 (N.D. Ill. June 10, 2025), the court denied a motion to dismiss because the plaintiff alleged that she received two voicemails that were "identical in tone, voice, content, and style"; that other consumers had complained about receiving the same call; and that the voicemails had the exact same file size. *See also Rose v. New TSI Holdings, Inc.*, No. 21-CV-5519 (JPO), 2022 WL 912967 (S.D.N.Y. Mar. 28, 2022) (plaintiff sufficiently pled claim where she alleged receiving multiple identical messages and included transcripts demonstrating their identical content). Plaintiff here has alleged none of these things. The absence of personalization does not support an inference of prerecording; a live person reading from a generic script would likewise omit the recipient's name.

While there is no controlling Eighth Circuit precedent on the sufficiency of prerecorded voice allegations under § 227(b), as discussed *supra*, courts across the country have consistently required plaintiffs to plead specific, contextual facts to support a plausible inference that a voicemail used prerecorded voice technology. *See Rahimian*, 2022 WL 798371, at *2 (collecting cases). Plaintiff's Complaint falls well short of this standard, thus Count II should be dismissed.

### C. Plaintiff's Request for Injunctive Relief Must Be Dismissed Under 12(b)(1) for Lack of Article III Standing

Plaintiff is foreclosed from seeking injunctive relief under the TCPA because the Complaint fails to allege any facts to support the risk of future harm. The equitable remedy of injunctive relief is "unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Critically, "[p]ast wrongs do not in themselves amount to that real and immediate threat of injury." *Id*. at 103. The Eighth Circuit has consistently applied this principle: "Past exposure to illegal conduct does not in itself show a present case or

`

controversy regarding injunctive relief." *Harmon v. City of Kansas City, Mo.*, 197 F.3d 321, 327 (8th Cir. 1999).

Courts have consistently dismissed requests for injunctive relief in TCPA cases on this basis. Most recently, in *Koeller v. Cyflare Security, Inc*., a court in this Circuit dismissed a plaintiff's claim for injunctive relief where his "allegations are limited to past instances of unlawful conduct," holding that "the mere possibility that Defendant could conduct similar calls in the future" is insufficient to confer standing. 2025 WL 3280316, at *2–3. Courts across the country have reached the same result. For example, in *Taylor v. Kin Insurance, Inc*., the court observed that "[c]ourts applying this principle in the context of the TCPA have generally found that allegations of past TCPA violations do not establish standing to pursue injunctive relief." 2025 WL 1651524, at *2. Even though the plaintiff there alleged two calls within a single month, the court held that these "isolated prior harms, without more, offer the Court no basis to conclude that Plaintiff is likely to receive another pre-recorded call from Defendant in the future." *Id*. Similarly, in *Martin v. Bottom Line Concepts, LLC*, the court found no standing for injunctive relief where the complaint detailed only one call received before suit was filed, holding that the complaint "does not plead facts supporting the proposition that [Plaintiff] will ever receive a second (or third or fourth) robocall." 723 F. Supp. 3d 270, 281-82 (S.D.N.Y. 2024). *See also Schaevitz v. Braman Hyundai, Inc*., 437 F. Supp. 3d 1237, 1251-52 (S.D. Fla. 2019) (no standing for injunctive relief where plaintiff had not pled risk of future voicemails); *Miller v. Time Warner Cable Inc*., No. 8:16-CV-00329-CAS (ASx), 2016 WL 7471302, at *4 (C.D. Cal. Dec. 27, 2016) (risk of future unsolicited calls "too speculative to establish a real or immediate threat of repeated injury").

Plaintiff's Complaint alleges only past conduct and does not rise to a level sufficient to warrant the imposition of injunctive relief. The communications at issue occurred on December

14

`

14, 2025, and in the days that followed; these alleged communications occurred months before this suit was filed on February 2, 2026. Compl. ¶¶ 28–31. The Complaint contains no allegation that Plaintiff has received any additional communications from Defendant since that time. Similarly, the Complaint does not allege that Defendant has continued to contact Plaintiff, that Defendant has contacted other consumers in a manner suggesting an ongoing campaign directed at Plaintiff, or that there is any reason to believe Plaintiff will receive future communications from Defendant. The facts here are materially indistinguishable from *Koeller*: like the plaintiff there, Plaintiff alleges past communications and nothing more. The Complaint offers no facts suggesting that Defendant will contact Plaintiff again, and as the *Koeller* court noted, the "mere possibility" of future contact is not enough. *Koeller*, 2025 WL 3280316, at *3. Because Plaintiff has failed to allege any real or immediate threat of future injury, this Court lacks Article III jurisdiction over his request for injunctive relief, and it should be dismissed.

## V.    CONCLUSION

For the reasons outlined above, Plaintiff's Complaint fails to state a cause of action for violation of the TCPA and for injunctive relief. Accordingly, Defendant requests that the Court dismiss the complaint with prejudice.

Dated: April 17, 2026                    Respectfully submitted,

<u>*/s/ V. Amanda Witts*</u>
V. Amanda Witts (admitted *Pro Hac Vice*)
Nonny O. George (admitted *Pro Hac Vice*)
MITCHELL SANDLER PLLC
2020 K Street NW, Suite 760
Washington, D.C. 20006
Tel: (202) 886-5260
v.awitts@mitchellsandler.com
ngeorge@mitchellsandler.com

15

`

Antwan Phillips
WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, AR 72201
Tel: (501) 371-0808
Fax: (501) 376-9442
aphillips@wlj.com

*Attorneys for Defendant West Capital Lending, Inc.*

16

`

## CERTIFICATE OF SERVICE

On April 17, 2026, I hereby certify that a true and correct copy of the foregoing was duly served upon the attorney of record for each party through the Court's electronic filing system.

*/s/ V. Amanda Witts*
V. Amanda Witts