**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

|  |  |
|---|---|
| MATTHEW PERRY, individually and on behalf of other similarly situated.<br><br>        Plaintiff,<br><br>v.<br><br>WEST CAPITAL LENDING,<br><br>        Defendant. | Case No.: 4:26-cv-94 |

**PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS**

### INTRODUCTION

A 1991 law that bars vehicles from a park applies equally to Cybertrucks and to sedans, even though the former didn't exist at the time. So, too, here: The Telephone Consumer Protection Act prohibits sending text messages to phone numbers on the national Do Not Call List, just as it prohibits traditional voice calls.

Of course, text messaging didn't exist when the TCPA was passed in 1991, so Congress didn't have texts specifically in mind. But no matter: As both courts and the FCC have long recognized, the plain meaning of the word "call" in the TCPA encompasses any "communication used primarily between telephones," regardless of whether that "call" is communicated by "voice" or "text message." *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123–24 (9th Cir. 2026) (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009)); *see* 18 FCC Rcd. 14014, 14115 ¶ 165 (2003). The TCPA's Do Not Call List rules therefore apply to text messages, and private individuals may enforce those rules in court. *See, e.g.*, *Esquivel v. Mona Lee, Inc.*, No. 25 Civ. 00607, 2025 WL 3275607, at *2–3 (S.D. Cal. Nov. 24, 2025); *Mujahid v. Newity, LLC*, No. 25 Civ. 8012, 2025 WL 3140725, at *2–3 (N.D. Ill. Nov. 10, 2025); *Wilson v. Medvidi*, No. 25 Civ. 03996, 2025 WL 2856295, at *2–4 (N.D. Cal. Oct. 7, 2025); *Wilson v. Skopos Fin., LLC*, No. 25 Civ. 00376, 2025 WL 2029274, at *4–5 (D. Or. Jul. 21, 2025).

The structure and purpose of the TCPA's Do Not Call List provisions confirm that interpretation. The Do Not Call List exists "to protect residential telephone subscribers' privacy rights"—which are invaded by text messages no less than by voice calls. 47 U.S.C. § 227(c)(1); *see Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1008–09 (N.D. Ill. 2010). The statute directs the FCC to prohibit "telephone solicitations" to listed numbers, a term that is defined by the statute to include any "call or message … which is transmitted to any person"

with a commercial purpose—broadly inclusive language that encompasses text messages even more clearly than the word "call" does standing alone. 47 U.S.C. § 227(a)(4); *see Medvidi*, 2025 WL 2856295, at *3; *Mujahid*, 2025 WL 3140725, at *2. And, anyway, the statute's Do Not Call List provisions expressly delegate "flexibility" to "fill up the details" to the FCC. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024); *see* 47 U.S.C. § 227(c)(3)(A), (E). So any doubt on this question should be resolved in favor of deference to the agency's longstanding reasonable judgment. *See Skopos Fin.*, 2025 WL 2029274, at *4.

Defendant's Motion also fails for a separate and independent reason: it asks this Court to hold that ringless voicemail messages—unsolicited prerecorded advertisements deposited directly into a consumer's voicemail—fall outside the TCPA. That position is unsupported by the statute, contradicted by every court to consider the issue, and inconsistent with the TCPA's purpose of protecting consumers from intrusive telemarketing practices. A ringless voicemail is no less invasive than a traditional call; it is simply a different technological means of delivering the same unwanted message. Courts have therefore consistently recognized that such messages qualify as actionable calls under the TCPA, and Defendant offers no persuasive reason to depart from that consensus.

## BACKGROUND

Section 227(c) authorizes the FCC to regulate telemarketing communications and establish the National Do Not Call Registry to protect consumer privacy. 47 U.S.C. § 227(c)(1). The statute prohibits unsolicited telephone solicitations to registered numbers and provides a private right of action for violations. *Id.* § 227(c)(3), (5).

Plaintiff alleges that his cellular telephone number has been listed on the National Do Not Call Registry since December 14, 2004. ECF No. 1 ¶ 25. Plaintiff further alleges that beginning

on or about December 14, 2025, he received multiple unsolicited telemarketing communications from Defendant. *Id.* ¶¶ 28–31. Specifically, Plaintiff alleges that he received at least nine text messages over the course of several days, all of which were sent from the same telephone number and were intended to advertise Defendant's mortgage lending services. Id. ¶¶ 28–31, 34–35.

In addition to these text messages, Plaintiff alleges that Defendant transmitted a ringless voicemail directly to Plaintiff's cellular telephone. *Id.* ¶ 40. Plaintiff further alleges that this voicemail featured a prerecorded voice and lacked any personalization, indicating that it was not a live, individualized communication. *Id.* ¶ 41. Plaintiff alleges that he never provided prior express consent to receive these communications, that he had no prior relationship with Defendant, and that the communications were unsolicited. *Id.* ¶¶ 26–27.

**ARGUMENT**

I.    **No Court has ever held that a Ringless Voicemail is not a Pre-Recorded Message and this Court should not be the First.**

The statutory provision which applies to calls made to cell phones, as is relevant here, provides in pertinent part: "It shall be unlawful for any person ... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to "any telephone number assigned to a ... cellular telephone service." § 227(b)(1)(A)(iii).

The Plaintiff is unaware of any court that has held that the TCPA does not apply to RVM messages. However, there is growing case law that have denied motions to dismiss just like the one that West Capital has filed here. *See Caplan v. Budget Van Lines,* No. 2:20-CV-130 JCM (VCF), 2020 U.S. Dist. LEXIS 136865, at *9 (D. Nev. July 31, 2020) ("This court finds that the TCPA is applicable to RVMs for the same reason. Focusing on the method of delivery, as

Budget would have the court do, elevates form over substance. At bottom, RVMs are still a nuisance delivered to the recipient's phone by means of the phone number. RVMs are calls as defined by the TCPA."); *Schaevitz v. Braman Hyundai, Inc.,* 437 F. Supp. 3d 1237, 1248-9 (S.D. Fla. 2019) ("The fact that Defendant utilizes a computer to deposit the prerecorded voice messages *en masse* into the voicemail boxes of nonconsenting consumers is no bar to finding such "ringless" voicemails qualify as "calls" within the meaning of § 227(b)(1)(A)… The "ringless" voicemail accompanied by a pre-recorded message is no less intrusive than a standard voicemail"). *See also Gurzi v. Penn Credit Corp.,* No. 6:19-cv-823-Orl-31EJK, 2020 U.S. Dist. LEXIS 56582 (M.D. Fla. Mar. 30, 2020); *Grant v. Regal Auto. Grp., Inc.,* No. 8:19-cv-363-T-23JSS, 2020 U.S. Dist. LEXIS 42685, at *4 (M.D. Fla. Mar. 12, 2020); *Aussieker v. Staccato Props.,* LLC, No. 2:19-cv-0089 TLN DB PS, 2019 U.S. Dist. LEXIS 221053 (E.D. Cal. Dec. 26, 2019); *Picton v. Greenway Chrysler-Jeep-Dodge, Inc.*, No. 619CV196ORL31DCI, 2019 U.S. Dist. LEXIS 103796, 2019 WL 2567971, at *2 (M.D. Fla. June 21, 2019).

In *Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907, 909-910 (W.D.Mich.2018) the court found that "Courts have consistently held that voicemail messages are subject to the same TCPA restrictions as traditional calls," that the "effect [of an RVM] on the plaintiff is the same" as a traditional call, that "voicemails are arguably more of a nuisance to consumers than text messages," and that "[t]o limit the TCPA to instances where [the defendant] specifically dialed [the plaintiff's] phone number and then reached her voicemail, and exclude [the defendant's] back door into [the plaintiff's] voicemail box, would be an absurd result." *Id.* at 909-912.

The Defendant doesn't cite a case to support its position. Instead, it relies on a case from the Eleventh Circuit that held that a plaintiff has no standing for a ringless voicemail. *See Grigorian v. FCA US LLC*, 838 F. App'x 390, 392-94 (11th Cir. 2020) (holding that

- 4 -

single ringless voicemail was insufficient for standing without conducing Spokeo standing

inquiry). However, *Grigorian* relied heavily on the reasoning from *Salcedo v. Hanna*, 936 F.3d

1162, 1170-72 (11th Cir. 2019), which was overturned by *Drazen v. Pinto*, 74 F.4th 1336, 2023

WL 4699939, at *5-7 (11th Cir. 2023) (*en banc*). Finally, West Capital relies on *Dickson v.*

*Direct Energy, LP*, 69 F.4th 338, 341 (6th Cir. 2023) for the proposition that ringless voicemails

are different than traditional calls. However, *Dickson* provided an extensive explanation on why

ringless voicemails should be subject to the TCPA:

> Direct Energy placed an unsolicited call to Dickson's phone (the RVM) to publicize its services, interjecting itself into Dickson's private sphere...And finally, receipt of unwanted voicemails (for example) to a personal telephone also undermines a sense of privacy, because being prompted to consider such messages for review and then disposal is disruptive of one's personal time—particularly given that the recipient might forever be prompted to do so until it is done. In these ways and others, telephones are logically part of one's private domain to which the right to be left alone extends. *See* Restatement § 652A cmt. a…. His injury therefore falls within the ambit of what Congress deemed to be an actionable harm when it enacted the TCPA.

*Dickson v. Direct Energy, LP*, 69 F.4th 338, 345-346 (6th Cir. 2023).

The Court in *Beard v. John Wester Chevrolet, LLC*, 640 F. Supp. 3d 420, 425 (E.D. NC.

2022) analyzed the landscape on the Defendant's argument:

> Although only a few courts have addressed whether a ringless voicemail is a call under the TCPA, every court that has addressed this question has held that a ringless voicemail is a call under the TCPA...Moreover, other courts have held that "call" as used in the TCPA means "to communicate with or try to get into communication with a person by a telephone." See, e.g., Ashland Hosp. Corp. v. Serv. Employees Int'l Union Dist. 119 WV/KY/OH, 708 F.3d 737, 742 (6th Cir. 2013). And a ringless voicemail does just that. Furthermore, prerecorded voicemails, text messages, and calls that directly go to voicemail are subject to the same TCPA restrictions as traditional calls.

This Court should hold the same.

Finally, While the Plaintiff does not need to rely on FCC rulings, as West Capital

concedes, the FCC has found that ringless voicemails are "calls" under the TCPA. *In re FCC*

*Finds That 'Ringless Voicemails' Are Subject to Robocalling Rules*, 37 F.C.C. Rcd. 13675 (2022). That holding is still entitled to consideration as Congress tasked the FCC with evaluating alternative approaches based on (among other things) open-ended criteria such as "effectiveness in protecting … privacy rights" and "other advantages and disadvantages." 47 U.S.C. § 227(c)(1)(A). And it empowered the FCC to make rules "that *the Commission determines* are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E) (emphasis added). That confers discretionary authority to "fill up the details," using open-ended language that bestows "flexibility" to best effectuate the TCPA's goals. *Loper Bright*, 603 U.S. at 395; *see Hulce*, 132 F.4th at 497 n.1 (noting the FCC's "delegated authority" to make Do Not Call List rules). It follows that, if the statute doesn't resolve this question, Congress expected that the FCC would.

## II.   The Do Not Call List provisions in TCPA section 227(c) authorize the FCC to prohibit text messages.

West Capital contends that a single use of the word "call" in section 227(c)(5)'s private right of action means that the Do Not Call List rules cannot apply to text messages. That's incorrect.

As courts and the FCC have long and recently recognized, the statute's ordinary meaning, structure, and purpose refute that argument: The word "call" as used in the TCPA refers to any attempt to communicate by telephone, so the FCC may prohibit telemarketing texts to numbers on the Do Not Call List. And West Capital's arguments for its restrictive interpretation all fail. The company goes about interpreting the word "call" in section 227(c)(5) all wrong, appearing to invent statutory terms to support its arguments, and assigning "call" a meaning that is at odds with the rest of the statute in multiple ways. Moreover, because section 227(c) is structured as an

express delegation of discretionary authority to the FCC, any doubt about the answer here simply means that Congress intended the agency's reasonable judgment to control.

### A. The plain meaning of the word "call" includes text messages

The starting point is the statute's text, which confirms that "call" includes text messages. To interpret a statutory term, courts look to the ordinary meaning of the word near in time to the statute's enactment, including by looking at contemporaneous dictionaries. *See e.g. Perrin v. United States*, 444 U.S. 37, 42, 100 S. Ct. 311, 62 L. Ed. 2d 199 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning. Therefore, we look to the ordinary meaning of the term . . . at the time Congress enacted the statute . . . . " (citation omitted)).

Courts have long recognized that the word "call" in the TCPA refers to any attempt to communicate by telephone, including text messages. That's because the contemporaneous "plain and ordinary meaning in this context" of "the statutory term 'call'" is "to communicat[e] with or an attempt to get in communication with a person by telephone." *Howard*, 164 F.4th at 1123–24 (quoting *Satterfield*, 569 F.3d at 953–54 & n.3 and *Webster's Third New International Dictionary* (1981 ed.)).

And courts have long recognized that the definition identified in *Satterfield*—any attempt to communicate with someone by telephone—is the meaning of "telephone call" that Congress would have intended in 1991, when the TCPA was enacted. *See, e.g.*, *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 W.V./Ky./Oh.*, 708 F.3d 737, 742 (6th Cir. 2013); *Better Mortgage Corp.*, 2025 WL 3493815, at *5; *Lozano*, 702 F. Supp. 2d at 1007; *Sagar v. Kelly Auto. Grp., Inc.*, No. 21 Civ. 10540, 2021 WL 5567408, at *4 (D. Mass. 2021); *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1247 (S.D. Fla. 2019). Texting is, of course, a means of communicating with

someone by telephone. (West Capital hasn't disputed that a text is a "telephone" communication; of course it is.) So "text messaging plainly fits within that literal definition of a 'call,' because 'text messaging is a form of communication used primarily between telephones.'" *Howard*, 164 F.4th at 1123–24 (quoting *Satterfield*, 569 F.3d at 954)).

The meaning of the word "call" is especially clear in the nearby autodialer provisions in section 227(b) of the original TCPA. The word "call" is used extensively in those provisions prohibiting automatic dialing technology and robocalls. Most notably, section 227(b) prohibits using autodialer or robocall technology "to make any call … to any telephone number assigned to a paging service." 47 U.S.C. § 227(b)(1)(A)(iii). A typical paging device in the early 1990s would have displayed an incoming message as written text—usually displaying a phone number to call. So the use of the word "call" in connection with pagers in section 227(b) establishes "that the term 'call' cannot invoke only the common usage … in which a 'call' refers to oral communication between two parties via telephone." *Lozano*, 702 F. Supp. 2d at 1005; *see also Abbas v. Selling Source, LLC*, No. 09 Civ. 3413, 2009 WL 4884471, at *4 (N.D. Ill. 2009).

Indeed, because it has been broadly understood for decades that the word "call" in the TCPA includes texts, courts have commonly treated that interpretation as obvious and uncontroversial. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call.'"); *Warciak*, 949 F.3d at 356 ("Text messages to a cellular telephone qualify as a 'call' within the meaning of the statute."). That has remained true even after the *McLaughlin* and *Loper Bright* decisions that West Capital says (at 11–12) should be causing a sea change. For example, the Ninth Circuit recently revisited the "statutory construction" question "under de novo review." *Howard*, 164 F.4th at 1123–24. And the Circuit confirmed its prior holding that a "'text message' constitutes a 'call' within the meaning

of the TCPA," without granting any deference to the FCC. *Id.* ("[I]t is clear from *Satterfield*'s substantive analysis that the conclusion would be the same even in the absence of *Chevron* deference."). So even post-*Loper Bright*, "the significant weight of case authority" supports interpreting "call" to include text messages. *Better Mortg. Corp.*, 2025 WL 3493815, at *9. The statute's structure independently confirms this plain-meaning reading.

### B. That interpretation of the word "call" aligns section 227(c)'s private right of action with its substantive provisions.

Much of West Capital's argument focuses on the single use of the word "call" in section 227(c)(5). But reading section 227(c)(5)'s private right of action in context with the substantive Do Not Call List provisions of section 227(c) further confirms that text messages are covered.

To see why, start with the core of section 227(c)—its prohibition on "making or transmitting a telephone solicitation to the telephone number of any subscriber" on the Do Not Call List. 47 U.S.C. § 227(c)(3)(F). Text messages, of course, are "ma[de] or transmitt[ed]" to a "telephone number." *Id*. § 227(e)(8)(C). And it is well-established that the residential telephone "subscriber[s]" protected by the Do Not Call List include cell phone subscribers: The FCC determined that cell phone subscribers are covered when it first created the Do Not Call List rules, *see* 18 FCC Rcd. 14014, 14037–39 ¶¶ 33–36 (2003), and courts have overwhelmingly agreed with that interpretation of the statute ever since, *see, e.g.*, *Harriel v. Bealls, Inc.*, 2025 WL 2379617, at *2 (M.D. Fla. 2025); *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203 & n.4 (S.D.N.Y. 2024) (collecting cases).

The term "telephone solicitation" also clearly encompasses text messages. The statute expressly defines a "telephone solicitation" to mean "a telephone *call or message* … which is transmitted to any person" for commercial purposes, with certain exceptions not relevant here. 47 U.S.C. § 227(a)(4) (emphasis added). A text message, no less than a voice call, can be

- 9 -

"transmitted." *See, e.g.*, *Transmit*, *Random House Webster's College Dictionary* (1991) ("to send a signal by radio waves or by wire"). And the reference to a "call or message" covers texts even more clearly than the word "call" standing alone. As explained above, "the ordinary, contemporary, and common meaning" of the word "call" in the TCPA includes text messages. *Satterfield*, 569 F.3d at 953–54 & n.3; *see supra*, Part I.A. And contemporary definitions of the word "message" do too—a message in 1991 was "[a]ny notice, word, or communication, *no matter the mode and no matter how sent*." *Message*, *Black's Law Dictionary* (6th ed. 1990), https://perma.cc/MTC3-H47K (emphasis added).[1] So "call" and "message" both describe communication with a phone, and neither differentiates between oral and written mediums.

Defendant's reliance on the absence of the word "message" in § 227(c)(5) is also misplaced. Courts do not read isolated statutory terms in a vacuum, particularly where doing so would create internal inconsistency within the same statutory scheme. Instead, statutes must be interpreted as a whole, with each provision read in harmony with the others.

Here, § 227(c) repeatedly uses broad, inclusive language—prohibiting the "making or transmitting" of "telephone solicitations," which are defined to include any "call or message" transmitted to a person for commercial purposes. 47 U.S.C. § 227(a)(4), (c)(3)(F). Reading the private right of action in § 227(c)(5) to exclude text messages would create a mismatch between the conduct the statute prohibits and the conduct it allows consumers to enforce. Moreover, the canon against surplusage does not support Defendant's position. The phrase "call or message" in § 227(a)(4) serves to confirm the breadth of covered communications, not to imply that "call"

---

[1] *See also, e.g.*, *Message*, *Random House Webster's College Dictionary* (9th ed. 1991) ("a communication delivered *in writing*, speech, by means of signals, etc.") (emphasis added); *Message*, *Oxford English Dictionary* (2d ed. 1989) ("an oral *or written* communication sent from one person to another") (emphasis added).

- 10 -

standing alone is narrow. If anything, Congress's use of overlapping terms reinforces that it intended to capture all forms of telephonic communication, regardless of medium.

Finally, the purpose of the Do Not Call List provisions further supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). "[A] voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *accord Howard*, 164 F.4th at 1124; *Mujahid*, 2025 WL 3140725, at *2; *Medvidi*, 2025 WL 2856295, at *3; *Skopos Fin., LLC*, 2025 WL 2029274, at *4. Indeed, nothing in the statute gives any suggestion that Congress thought "oral messages were more invasive or objectionable than written ones." *Medvidi*, 2025 WL 2856295, at *3.

### C. Even Under *Loper Bright*, the FCC's Interpretation Confirms That "Call" Includes Text Messages.

The best reading of the statute is that the word "call" includes texts. But if there's any doubt about that, the FCC's interpretation should resolve it. That's because Congress expressly delegated authority to the FCC to "fill up the details" of the Do Not Call List rules. *Loper Bright*, 603 U.S. at 395. As a number of district court have held post-*Loper Bright*, section 227(c) "explicitly delegates such authority." *Skopos*, 2025 WL 2029274, at *4; *see Mey* v *Liberty Home Guard, LLC*, 2026 US Dist LEXIS 739, at *15, *19 (explaining section 227(c) "expressly delegated rulemaking authority" such that even "[u]nder *Loper Bright*," the FCC's interpretation is entitled to "deferential review"). So the FCC's longstanding reasonable interpretation of the word "call" should still carry the day. *See id*.

To be sure, mere statutory ambiguity is no longer automatic cause to defer to an agency. *See Loper Bright*, 603 U.S. at 412–13 (overruling *Chevron*). And district courts are not bound by the Hobbs Act to adopt FCC interpretations; they can and should make their own assessment of

the statute. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025).

Sometimes "the best reading of a statute is that it delegates discretionary authority to an agency." *Loper Bright*, 603 U.S. at 395. Courts thus still afford deference to agency interpretations when a statute "expressly delegate[s] to an agency the authority to give meaning to a particular statutory term," tasks an agency "to fill up the details of a statutory scheme," or tells an agency "to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility." *Id.* at 394–95. In that case, a court's role is merely to "fix[] the boundaries" of agency authority and ensure "reasoned decisionmaking" within them. *Id.* at 395; *see Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 587–88 (6th Cir. 2025).

Section 227(c) is an express delegation of that sort. Congress didn't write the Do Not Call List rules itself. Instead, it tasked the FCC with evaluating alternative approaches based on (among other things) open-ended criteria such as "effectiveness in protecting … privacy rights" and "other advantages and disadvantages." 47 U.S.C. § 227(c)(1)(A). And it empowered the FCC to make rules "that *the Commission determines* are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E) (emphasis added). That confers discretionary authority to "fill up the details," using open-ended language that bestows "flexibility" to best effectuate the TCPA's goals. *Loper Bright*, 603 U.S. at 395; *see Hulce*, 132 F.4th at 497 n.1 (noting the FCC's "delegated authority" to make Do Not Call List rules). It follows that, if the statute doesn't resolve this question, Congress expected that the FCC would.

### D. West Capital's arguments for a narrower interpretation are unpersuasive.

Defendant's contrary arguments rely on misreadings of the statute, selective quotations, and flawed interpretive assumptions. West Capital would have this Court interpret the Do Not Call List provisions more narrowly, insisting that the word "call" in section 227(c)(5) can only mean a voice communication and therefore the statute categorically excludes text messages. The cases it asserts show support for its arguments include *Jones v. Blackstone Medical Services*, 792 F. Supp. 3d 894 (C.D. Ill. 2025)—which is currently on appeal before the Seventh Circuit— and *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp 3d 1270 (N.D. Fla. 2025), but none of the arguments made by West Capital or in those cases are persuasive.

Consider first how West Capital reads the word "call" in section 227(c)(5). It repeats a few basic arguments for reading that word as implicitly limited to voice calls. But all of them go about interpreting the statute wrong.

First, West Capital insists that "call" cannot encompass text messages because in 1991 text messages did not exist. [*ones*, 792 F. Supp. 3d at 899 ("Text messaging was not an available technology in 1991")). That's not how statutory interpretation works. It's true that text messaging was not mainstream in 1991, so Congress didn't have texting specifically in mind. *See Medvidi*, 2025 WL 2856295, at *2. But it is black-letter law that statutes are not "confined to the particular applications contemplated by the legislators." *Diamond v. Chakrabarty*, 447 U.S. 303, 315–16 (1980) (collecting cases). Instead, "statutes must be permitted to apply to technologies not in existence when a statute was drafted." *Lozano*, 702 F. Supp. 2d at 1008.

There's nothing unusual about that. "While every statute's *meaning* is fixed at the time of enactment," it is commonplace that "new *applications* may arise in light of changes in the world." *Wis. Cent. Ltd.*, 585 U.S. at 284. That's why, for example, "a 1925 statute dealing with 'news media' … appl[ies] to television." *Squillacote v. United States*, 739 F.2d 1208, 1213 (7th

- 13 -

Cir. 1984). Or why a 1991 law that said "no vehicles in the park" would prohibit Cybertrucks and Priuses, not just Mustangs and Corollas. *See id.* And it is why a 1935 statutory provision about "mowers," from a time when "mowers" were "horse-drawn," applied fifty years later to farm technology that had changed considerably. *In re Erickson*, 815 F.2d 1090, 1092 (7th Cir. 1987). Although "horse-drawn mowers" had long been replaced by "hydraulic" "tractor-mounted" machines, Judge Easterbrook explained that the old statutory term embraced the new technology. *Id.* at 1092–93. That's because "[a] statutory word of description does not designate a particular item . . . but a class of things that share some important feature." *Id.* at 1092. Indeed, "a mower with a built-in stereo cassette deck would still be a 'mower,' ... because it would still cut the hay," yet with "a second function, entertainment." *Id.* at 1093.

The same is true here. "In determining whether section 227(c) applies to text messages, the Court looks to the plain meaning of the text rather than the specific facts or technology that Congress may have had in mind in 1991 at the time of the TCPA's passage." *Medvidi*, 2025 WL 2856295, at *2. The 1991 meaning of "telephone call"—which "refers to both oral and written communications"—is what matters. *Id.*; *see Lozano*, 702 F. Supp. 2d at 1007.

Next, West Capital says that in today's parlance it sounds odd to refer to a text message as a telephone call. West Capital cites *Davis*—they found it impossible to read "call" in anything but the familiar colloquial sense, and so concluded that the "analysis begins and ends there." *Davis*, 797 F. Supp. 3d, at *1273; *El Sayed*, 2025 WL 2997759, at *1; *see also Jones*, 792 F. Supp. 3d at 899–900 (relying on a similar intuition).

But, as the Ninth Circuit recently confirmed, the "statutory construction" question is not how "call" is used in modern parlance, but how "contemporary dictionaries" with the TCPA's passage defined the "statutory term 'call.'" *Howard*, 164 F.4th at 1123–25. And "text messages"

- 14 -

are covered because they "plainly fit[] within" the definition of "call"—in dictionaries contemporaneous with the TCPA—as "an attempt to communicate by telephone." *Id.*

*Howard*'s focus on the meaning of "call" as contemporaneous with the TCPA's passage follows the Supreme Court's instruction that modern colloquial usage is of no consequence because "every statute's meaning is fixed at the time of enactment." *Loper Bright*, 603 U.S. at 400. That's because, when language has evolved since a statute's enactment, current usage can be misleading.[2] For example, in *New Prime, Inc. v. Oliveira*, the Supreme Court explained that the statutory term "contracts of employment" in the Federal Arbitration Act nowadays "might call to mind only agreements between employers and employees," and thus exclude independent contractors. 586 U.S. at 114. But that "modern intuition" did not match the "evidence of the term's meaning at the time of the Act's adoption," which revealed that "'contract of employment' usually meant nothing more than an agreement to perform work." *Id*. The Supreme Court therefore held that the statutory exception at issue reached not just conventional "employees," as modern parlance might suggest, but also modern independent contractors, as definitions from the time of the statute's enactment showed. *See id.* at 114–16. *New Prime* illustrates that when there's a mismatch between modern intuitions and the original meaning at the time of enactment, the latter is what controls—not (as West Capital's cases put it) how an "ordinary person would think of a text message" today, *Davis*, 797 F. Supp. 3d at *1273.

If Congress wanted to limit *only* the private right of action in section 227(c)(5) to voice communications, implicitly doing so by using the word "call" would have been a strange way to

---

[2] No doubt most people wouldn't use the word "call" the way the TCPA does in casual conversation, especially nowadays. In 2025, text messages are ubiquitous, and society has developed a whole vocabulary around them—think "emoji," "group chat," "read receipt," and so forth. As part of that texting-specific lexicon, we are now very accustomed to saying "text message" or just "text" to describe written messaging between phones.

go about it. After all, the word "call" *does* include textual communication in other provisions of the statute. *See supra*, Part I.A. If Congress intended to cabin section 227(c)(5)'s private right of action to *exclude* text messages, it wouldn't have done so by using a term that elsewhere *includes* them.

Because it's doubtful that Congress intended section 227(c)(5) to have a narrower scope than the Do Not Call List regulations it exists to enforce, the much better reading of "call or message" in section 227(a)(4) is that it instead signals Congress's intent to inclusively define the kinds of "telephone solicitations" that can be prohibited. The definition of "telephone solicitation" focuses not on a communication's form but on whether it has "the purpose of encouraging" various kinds of commercial transactions. 47 U.S.C. § 227(a)(4); *see, e.g.*, *Hulce*, 132 F.4th at 497–500 (Do Not Call List liability turned on whether a text message had the requisite commercial purpose).

At the same time, the statute uses broad and inclusive language to describe how such a communication might be conveyed—the FCC is directed to prohibit "making *or* transmitting" a telephone solicitation to "any" listed number, and a telephone solicitation is a "call *or* message" that is "transmitted to *any* person." 47 U.S.C. § 227(a)(4), (c)(3)(F) (emphases added). Congress presumably used all that broad and disjunctive language to capture a wide range of communication mediums, including text messages. *See Pepper v. GVG Cap. LLC*, 677 F. Supp. 3d 638, 643 (S.D. Tex. 2023) (rejecting an argument that "text messages are not actionable" under section 227(c) because it "fails in the face of the statutory text, which refers to 'telephone call[s] or message[s]'"). The statutory definition of "telephone solicitation" therefore "makes clear that Congress was more concerned with the purpose of the telephone

communications … than the form in which those communications are transmitted." *Medvidi*, 2025 WL 2856295, at *3; *Mujahid*, 2025 WL 3140725, at *2 (same).

Congress has even "ratified" the longstanding interpretation from "the FCC as well as myriad courts" that "telephone call" "in § 227(b) [] include[s] text messages." *Alvarez*, 2026 WL 202930 *6; *see* Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, Pub. L. No. 116-105, 133 Stat 3274 (2019) (recognizing that text messages are covered in section 227(b) by providing for streamlined information sharing with the FCC relating to "a call made or a text message sent in violation of subsection (b)"). "Where, as here, Congress has not just kept its silence by refusing to overturn the administrative construction, but has ratified it with positive legislation, we cannot but deem that construction virtually conclusive." *Commodity Futures Trading Com'n v. Schor*, 478 U.S. 833, 846 (1986).

And reading the word "call" differently in section 227(c)(5) than in section 227(b) would make no sense. Absent good reason to think otherwise, "identical words used in different parts of the same statute" carry "the same meaning." *Henson*, 582 U.S. at 85. As the FCC recently explained, it would be "anomalous" to give the word "call" a narrower meaning in section 227(c)(5) than it has elsewhere in the TCPA. 38 FCC Rcd. at 12257 ¶ 27. Congress would not have *excluded* text messages in section 227(c)(5) by using a term that in section 227(b) *includes* them. So "there is no reason to believe that ['call'] has a different meaning when used in the do-not-call provisions." *Dawson*, 2024 WL 4765159, at *5.

Nor does West Capital provide any reason why "call" in section 227(b) covers text messages, but "telephone call" in section 227(c) does not. It doesn't argue that the addition of the modifier "telephone" somehow means a "telephone call" doesn't include a "text message" while just the term "call" does. How could it, as a text is clearly a "telephone" communication.

- 17 -

In short, Defendant's interpretation cannot be reconciled with the TCPA's text, structure, or purpose. The ordinary meaning of "call" at the time of enactment encompasses any attempt to communicate by telephone, including text messages, and nothing in the statute suggests that Congress intended to exclude the most common form of telemarketing communication today. Reading the statute as Defendant proposes would create internal inconsistencies, undermine the Do Not Call Registry's effectiveness, and allow precisely the type of privacy invasion Congress sought to prevent. The better—and correct—reading is the one adopted by the Second Circuit, the FCC, and the overwhelming weight of authority: unsolicited telemarketing text messages are "telephone calls" within the meaning of § 227(c).

It is no surprise then that the majority of courts have concluded that under the TCPA text messages are calls. *See Wilson v. Easy Spirit, LLC*, No. 3:25-CV-112 (SFR), 2026 U.S. Dist. LEXIS 69059, at *13 (D. Conn. Mar. 31, 2026) (collecting cases). This Court should hold the same.

### III.    The Plaintiff has plainly alleged that the call he received was pre-recorded.

Under the TCPA, it is unlawful "for any person ... to make any call [other than for emergencies or with the recipient's prior express consent] using … an artificial or prerecorded voice" to a cell phone. 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA does not define the term artificial or prerecorded voice. *Mina v. Red Robin Int'l, Inc.*, No. 20-CV-00612-RM-NYW, 2022 U.S. Dist. LEXIS 104423, 2022 WL 2105897, at *7 (D. Colo. June 10, 2022).

"A TCPA claim survives a motion to dismiss if the plaintiff describe[s] anything about the circumstances of a call or message contributing to his belief it was pre-recorded." *Slominski v. Globe Life Inc.,* 2024 U.S. Dist. LEXIS 24378, *16 (E.D. NC.). Indeed, "Courts have denied motions to dismiss in cases brought under the TCPA in which plaintiffs have alleged that they

received prerecorded calls and that the contents of the call were identical." *Rose v. New Tsi Holdings, Inc.*, No. 21-CV-5519 (JPO), 2022 U.S. Dist. LEXIS 56525, 2022 WL 912967, at \*2 (S.D.N.Y. Mar. 28, 2022) (citing *Dendy v. Chartrand*, No. 18-CV-1118-WPJ, 2019 U.S. Dist. LEXIS 26778, 2019 WL 719762, at \*3 (D.N.M. Feb. 20, 2019) (denying motion to dismiss "because the calls contained prerecorded messages" and "contained the same message")).

A plaintiff sufficiently pleads a pre-recorded message claim under the TCPA when the allegations supply details beyond bare legal conclusions or the recitation of statutory language, such as the frequency of the calls and their content. *Evans v. Nat'l Auto Div., L.L.C.*, No. 15-8714, 2016 U.S. Dist. LEXIS 29348, at \*4-5 (D.N.J. Mar. 7, 2016). Courts have recognized the following averments to be indicative of a prerecorded call: "1) a delay before hearing the message, 2) calls ending with a beep, 3) instructions to call a 1-800 number, 4) an unusual phone number or short code instead, 5) a robotic voice on the other end, or 6) the absence of anything specific to the person being called." *Smith v. Am.-Amicable Life Ins. Co. of Texas*, No. CV 22-333, 2022 U.S. Dist. LEXIS 62115, 2022 WL 1003762, at \*2 (E.D. Pa. Apr. 4, 2022); *see also Smith v. Pro Custom Solar LLC*, No. CV1920673KMESK, 2021 U.S. Dist. LEXIS 8616, 2021 WL 141336, at \*2-3 (D.N.J. Jan. 15, 2021).

Here, Plaintiff alleges that the voicemail he received was transmitted using ringless voicemail technology and "featured a prerecorded voice." ECF No. 1 ¶ 41. Plaintiff further alleges that the message "did not include any personalization such as the Plaintiff's name," supporting the inference that it was not delivered by a live individual but instead by a standardized, prerecorded system. *Id.*

Plaintiff also alleges that the voicemail was part of a coordinated series of telemarketing communications sent from the same number, including multiple text messages advertising

- 19 -

Defendant's services. *Id.* ¶¶ 28–31, 34–35. These allegations provide context supporting the conclusion that the voicemail was part of a broader automated or scripted campaign rather than a one-off, live communication. *See Rahn v. Bank of Am.*, No. 1:15-CV-4485-ODEJSA, 2016 U.S. Dist. LEXIS 186171, at *10-11 (N.D. Ga. June 23, 2016) ("When one receives a call, it is a clear-cut fact, easily discernible to any lay person, whether or not the recipient is speaking to a live human being, or is instead being subjected to a prerecorded message.").

These facts are more than sufficient to put West Capital on notice of the claims against it. *See e.g. Neptune v. Whetstone Partners, LLC*, 34 F.Supp.3d 1247, 1250 (S.D. Fla. 2014) (finding sufficient allegations that calls were prerecorded where *inter alia* Defendant called Plaintiff on numerous occasions several times per day, with generic content messages such as a prerecorded voice reminding Plaintiff that his payment was due); *Sojka v. DirectBuy, Inc.,* 35 F. Supp. 3d 996, 1003 (N.D. Ill. 2014) ("The complaint describes in detail five voicemails left for the Sojkas by DirectBuy from August 2012 to November 2012."). Indeed, the Court in *Abramson v. AP Gas & Elec. (PA), LLC*, Civil Action No. 22-1299, 2023 U.S. Dist. LEXIS 18996, at *8 (W.D. Pa. Feb. 6, 2023) also found that "Abramson alleges that he received a call that started with the following pre-recorded message….This allegation sufficiently alleges that the caller used a prerecorded message.").

## CONCLUSION

For all of the foregoing reasons, Plaintiff has plausibly alleged violations of the TCPA based on Defendant's unsolicited text messages and ringless voicemail. Defendant's Motion to Dismiss rests on strained statutory interpretations and premature factual challenges that are inappropriate at the pleading stage. Because the Complaint more than adequately states claims under the TCPA, the Court should deny Defendant's Motion to Dismiss in its entirety.

Dated: April 18, 2026

/s/ *Anthony I. Paronich*,
Anthony I. Paronich (*pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[f] (508) 318-8100
anthony@paronichlaw.com

Jason Ryburn
Ryburn Law Firm
650 S. Shackleford Rd., Ste. 231
Little Rock, AR 72211
[o] (501) 228-8100
[f] (501) 228-7300
jason@ryburnlawfirm.com